SMELTZER *v.* TIPPIN.

Opinion delivered June 16, 1913.

1.  DAMAGES—MEASURE OF—BREACH OF CONTRACT.—The measure of damages for breach of warranty in a contract for sale of chattels is such damages as are direct and certain, or which are capable of being ascertained with a reasonable degree of certainty, and which result from the breach and which may reasonably be regarded as within the contemplation of the parties at the time of the sale as the probable consequences of the breach. (Page 279.)

2. DAMAGES—BREACH OF WARRANTY IN CONTRACT FOR SALE OF CHATTELS
—MEASURE OF DAMAGES.—A. purchased strawberry plants of a
certain kind from B. It required cultivation for a year before the
plants would produce, but when they did produce it was found
that they were strawberries of an inferior kind. *Held*, B. having
warranted that the plants were the kind sold, A. is entitled to
recover on the breach of warranty, and the measure of damages
is the difference between the value of the crop of strawberries
of the kind that was produced during the first season they bore
and the crop that would have been produced under ordinary cir-
cumstances if the plants had been the plants sold as represented,
together with the cost of resetting the plants, the cost of re-
cultivation, and the cost of the new plants, A. having already paid
for the plants which he set out. (Page 281.)

Appeal from Crawford Circuit Court; *Jeptha H.
Evans*, Judge; reversed.

### STATEMENT BY THE COURT.

The plaintiff, George T. Tippin, brought this suit
against M. F. H. Smeltzer and W. A. Steel to recover
damages for a breach of warranty in the sale of certain
strawberry plants.

In November, 1909, the plaintiff leased from Tom
Wallace for a period of eight years two hundred acres
of land in Johnson County, Arkansas. A part of the
lease was an old pasture with large trees but no under-
brush on it. The plaintiff cleared this and decided to
set it out in strawberry plants. The defendants were
dealers in strawberry plants and the plaintiff went to
them to purchase the plants. He told the defendants
that he wished to set out twenty-five or thirty acres of
land in Klondyke strawberry plants for commercial pur-
poses. He described to defendants the character of the
soil and the reason why he wanted Klondyke plants.
The reason was that the Klondyke berries came in be-
tween the season of strawberries grown further south
and those grown further north, and were more profitable
for shipment. He gave the defendants an order for one
hundred and fifty thousand plants of the Klondyke va-
riety and also an order for some Mitchell plants. The
price agreed to be paid for the plants was $2.15 per thou-
sand. The plaintiff did not receive all the plants he or-

dered but received sufficient plants to set out about twenty-five acres. He prepared his ground and set out the plants in the spring of 1910. He cultivated them during the year 1910 and they began to bear fruit in the year 1911. Strawberry plants do not begin to bear until the second year after they are set out but require cultivation during the first year. When the plants began to bear fruit the plaintiff ascertained that they were not Klondyke berries and that they were of the variety called Aroma. The testimony on the part of the plaintiff was that the berries ripened about ten days or two weeks later than the Klondyke berries and were not profitable for shipemnt. That it was impossible to ascertain that the plants set out were not of the Klondyke variety until after the berries appeared upon the plants. That the season of 1911 was a good season for strawberries and that the Klondyke plants grown by his neighbors on similar soil produced an abundant crop of good berries.

The plaintiff also adduced evidence tending to show that if his berries had been Klondykes, and a good stand, they would have cleared him one hundred dollars per acre the first year they bore. With proper cultivation he would have cleared a like sum the second year and the third year probably seventy-five dollars per acre. That with right cultivation he would have had some berries the fourth year and would probably have realized as profits forty or fifty dollars per acre during that year. That considering the period of his lease and the life of the berries the value of his lease on the land at the time he ascertained that the plants were not Klondyke would have been three hundred or four hundred dollars per acre. That the estimated value of the lease in May, 1911, if the berries had been Klondyke berries, was between three hundred and four hundred dollars per acre. That the rental value of the land for annual crops was about five dollars per acre. That the Klondyke berry is a large, firm berry and the best marketable berry for that locality. That the berries actually

grown were of an inferior kind and quality and unprofitable for shipment. That the plaintiff shipped some of the berries and made no profit on them.

The testimony on the part of the defendants tended to show that the strawberry season of 1911 was not a good one in that locality. That it was very rainy and on that account the berries were inferior in color and quality. That the kind of berries grown by the plaintiff were as good as the Klondykes and were as valuable for shipment. Other facts will be referred to in the opinion.

The jury returned a verdict for the plaintiff and the defendants have appealed.

*E. L. Matlock* and *Sam R. Chew,* for appellants.

The measure of damages adopted by the trial court was erroneous.

For the measure of damages for the loss sustained or damages done to a growing crop of grass or meadow, see 59 Ark. 105. Destruction of a corn or cotton crop, 56 Ark. 612. Growing forest timber, 67 Ark. 371. Orchard of fruit trees, 89 Ark. 418; 97 Ark. 54. An immature crop, 85 Ark. 111. The principle announced in the foregoing cases should control here. Recovery for mere contingent or speculative gains or losses will not be permitted. 2 Sutherland on Damages, 430-433, and authorities cited. See further on the question of the true measure of damages, 127 N. C. 230, 52 L. R. A. 362; 52 N. E. 1083; 73 N. Y. S. 388; 34 N. Y. 634.

In any case the elements of damage must be such as were reasonably in contemplation of the. parties at the time of making the contract. 2 Addison on Torts, 1187, § § 1385, 1386; 21 Ark. 431.

*Webb Covington* and *George O. Patterson,* for appellee.

The court gave to the jury the correct measure of damages in its instruction No. 3. The cases in 89 Ark. 418, and 97 Ark. 54, cited by appellant, correctly give the measure of damages applicable to the facts of this case, and support the trial court in the instruction given. In

other cases cited by appellants, they overlook the distinction between the measure of damages applicable in the case of seed or plants producing one crop only, and the measure applicable in the case of plants or trees where the profits are not confined to the yield or production of a single year.   95 S. W. 311; *Id.* 600, 86 S. W. 1048;. 47 Am. Rep. 192; 126 S. W. 936; 140 Am. Rep. 317, 318, 319; 23 L. R. A. .(N. S.) 310, and notes on pages 313, 314 and 315.

HART, J., (after stating the facts).   Defendants ask for a reversal of the judgment because the court erred in the admission of evidence as to the plaintiff's damages and because the court adopted the wrong theory as to the measure of damages.   The particular instruction complained of *i*s instruction numbered 3, which reads as follows:

"If you should find that defendants sold plaintiff Klondyke strawberry plants, but delivered some other kind you should find for plaintiff.   If lands set in these plants so bought and delivered were less valuable as a strawberry investment than if set to Klondyke plants, you should find for plaintiff the amount of such difference, considering the ordinary productive lifetime of the strawberry plant."

This instruction must be construed with reference to the testimony upon which it was predicated, and, when so considered, it was erroneous and prejudicial to the rights of the defendant.   It will be noted from the abstract of the testimony that the court tried the case on the theory that the measure of damages was the difference in value of the lease had it been set out in Klondyke plants, and what it was set out in the kind of plants actually grown on it.   This was erroneous.   It is true the measure of damages for the injury or destruction of trees on land is the difference in the market value of the land immediately before and immediately after the destruction of the trees.   *St. Louis, I. M. & S. Ry. Co.* v. *Ayres,* 67 Ark. 371.   The reason given is that it requires several years to replace trees, and that it can only be done

at considerable expense. Neither is the measure of damages the same as that fixed by the court for the destruction of an annual crop, which is the actual value of the crop at the time of its destruction. *Railway Company v. Yarbrough,* 56 Ark. 612. Strawberry plants are what are commonly called perennial plants. They do not begin to bear until the second year after they are set out and require cultivation for the first year. Their life as a commercial, productive plant is variously estimated at from four to seven years by the witnesses. Some of them say they begin to decline rapidly in production after the third year. The plaintiff at the time he made the purchase of the strawberry plants informed the defendants of the particular kind he desired, of the locality and character of the soil where they were to be planted and of his purpose in setting them out. There was a warranty by the defendant that the plants were of the kind sold. In such cases the purchaser is entitled to recover from the seller damages for the breach of warranty. The general rule is that only such damages may be recovered as are direct and certain, or which are capable of being ascertained with a reasonable degree of certainty, and which result directly from the breach, and which may reasonably be regarded as within the contemplation of the parties at the time of the sale as the probable consequences of the breach. 35 Cyc. 405-6.

In the case of the *Railway Company* v. *Jones,* 59 Ark. 105, the court held:

"The damage to a meadow destroyed by fire is measured by the cost of reseeding it and its rental value from the time of its destruction until it is restored."

As we have already seen, strawberries are not like cotton and corn, which are planted, grown and harvested annually, nor are they like orchards, which are required to be set out and cultivated for several years before they bear fruit and which with proper care and cultivation last for a great number of years. Strawberry plants become productive the second year after they are set out and are only profitable commercially for a few years.

The evidence on the part of the plaintiff tended to show that it could not be ascertained that the plants set out were not of the Klondyke variety until after they bore fruit. Therefore, in the application of the principles above announced, we hold that the measure of damages in the instant case is the difference between the value of the crop of strawberries of the kind that was produced during the season of 1911 and the crop which would have been produced under ordinary circumstances if the plants had been Klondyke plants as represented, together with the cost of resetting the plants, the cost of recultivating and the cost of the new plants, the plaintiff having already paid for the plants which he set out. The testimony shows that the first year the plants are set out they require cultivation but are not productive, and for this reason the plaintiff is entitled to the cost of recultivation, as stated above. See *Depew* v. *Peck Hdw. Co.,* 105 N. Y. Supp. 390. In that case it was held that where seed, if true to name, would result in a perennial crop; that is, one lasting from year to year, the measure of damages is the fair value of the crop lost, or the crop which would have been produced under ordinary circumstances, if the seed had been as represented, together with the cost of reseeding, the cost of recultivation and the cost of new seed sown. To the same effect see 30 Am. & Eng. Enc. of Law, 219.

It follows, therefore, that for the errors in giving instruction numbered 3, quoted above, and in admitting improper evidence on the measure of damages, the judgment will be reversed, and the cause remanded for a new trial.