GRAFTON-STAMPS DRUG COMPANY v. D. J. WILLIAMS.

[62 South. 273.]

1. SALES. *Warranties. Implied warranties. Breach. Damages.*

A sale of seed by name raises an implied warranty that it is true to name; and the fact that the buyer inspected the seed before purchasing is immaterial, when its character cannot ordinarily be ascertained by any reasonable inspection.

2. SAME.

That the person from whom the seller had himself purchased the seed declined to warrant to him that it was true to name is immaterial, although this fact was known to the last purchaser, his warranty not being in anywise dependent upon the existence *vel non* of a warranty to the person from whom he himself had purchased. At most such a fact is only a circumstance to be considered along with other evidence, if such there be, indicating that the lost sale was made upon an express or implied agreement that no such warranty should result therefrom.

3. SALES. *Warranties. Breach. Damages.*

Where seed is sold with warranty that it is true to name, the measure of damages for a breach thereof, when it is actually sown and produces a crop, not harmful to the land, but of less value than would have been produced, had the warranty not been broken, is the value of the crop such as the seed was warranted to produce, and would ordinarily have produced, less the value of the crop actually raised from the seed purchased.

APPEAL from the circuit court of Lincoln county.

HON. D. M. MILLER, Judge.

Suit by D. J. Williams against Grafton-Stamps Drug Company. From a judgment for plaintiff, defendant appeals.

Appellee, who was plaintiff in the lower court, is a truck farmer, and appellant a mercantile establishment dealing in garden seed. Appellee purchased of appellant certain tomato seed for the purpose of raising tomatoes

for the market. Knowing the varieties best suited for his purposes, he asked for "Early Detroit" and "Royal Pink" varieties. He received certain seed from appellee, prepared his ground, and planted them, and when the fruit began to mature for the first time discovered that they were not the variety ordered, but were a mixed seed, known as "Early Anna" and "June Pink," and were of very little value to him for marketing purposes. He brought suit for damages, alleging an implied warranty on the part of the seller, and claiming that the measure of damages was the difference between the value of the crop raised by him and the value of the crop which he would have raised under similar conditions from the seed ordered by him. The case was submitted to a jury under instructions of the court, who returned a verdict for the plaintiff for an amount less than that claimed.

There are three points raised by appellant on appeal: First, that appellee, being an experienced truck gardener, examined the seed at the time of the purchase, and therefore bought them with his eyes open, and that appellant was without experience in trucking, so that appellee had the advantage in making the purchase, and should have known what he was purchasing. Appellee's testimony, however, shows that it is impossible from mere inspection of the seed to tell the variety. The next point raised is that there was no implied warranty, and that in this case the label on the package bought by appellee was notice to the purchaser that the seed were not warranted. The label is as follows: "Tomatoes. Detroit Acme. (Same as Royal Pink.) The Amzi Garden Seed Company gives no warranty, expressed or implied, as to description, quality, productiveness, or any other matter, of any seed, bulb, or plant they sell, and will not be in any way responsible for the crop or results. If the purchaser does not accept goods on these terms, they are at once to be returned." In answer to this contention,

appellee says that there was an implied warranty that the seed would be true to name, and that, having called for a given variety, and being told that the seed purchased by him were of that variety the question of warranty was properly submitted to the jury. The last question raised is the measure of damages, which appellant contends was the cost of the seed, the cost of fertilizers used, the rental value of the land, and the value of labor in raising the crop, less the value of the inferior crop.

*Cassedy & Cassedy,* for appellant.

We will simply discuss the propositions of the implied warranty, as applied to the sale of seed for planting purposes. We refer the court to two cases in which all the decisions of the state are collected and the notes thereto, and they are a full brief on this subject, and as exhaustive of the subject as can be made. *Springfield Shingle Co.* v. *Edgecomb Mill Co.,* 35 L. R. A. 258 and notes; *Leonard Seed Co.* v. *Crary Canning Co.,* 37 L. R. A. 79 and notes.

The court will see from the collection of the cases, cited in the cases above referred to that there are two lines of decisions, one holding that the doctrine of *caveat emptor* applies where the vendor is merely a retail dealer in the sale of seed and not the producer, and that it is incumbent on the vendee if he wishes protection to exact an express warranty. This doctrine comes down from Lord Kent in the case of *Sexius* v. *Woods,* 2 Am. Dec. 215, in this case it was declared that "to make an affirmation at the time of a sale a warranty, it must appear by the evidence to be so intended, and not to have been a mere matter of judgment or opinion of which the defendant had no particular knowledge. Where it is admitted that the defendant is equally ignorant with the plaintiff he could have had no such intention."

The case of *Ryan* v. *Ulmer,* 108 Pa. 88, 80 Am. Rep. 210 seems to be the leading case upholding the above doctrine.

The other doctrine, that where a vendee calls for a specific kind of seed and the vendor produces it, without anything more being said, that this creates an implied warranty that the article sold is true to name, and is what was called for. This conduct on the part of the vendor is construed by the courts to be equivalent to saying "this is warranted to be what you called for."

These courts do not ignore the fact that in order to have a warranty it is necessary that the parties so intended, but they simply construe that action to imply that a warranty was intended.

All the cases along this line have followed the case of *Walsott* v. *Mount*, 38 N. J. L. 496, 20 Am. Rep. 426.

"Starting from the·admission that, in the absence of fraud and of a warranty the rule of *caveat emptor* applies, the effort is, not to elevate particular expressions contained in a given contract into a general law, but to regard each case in the light of its circumstances, and with respect solely to the understanding of the parties. Whether the representation or affirmation accompanying a sale shall be regarded as a warranty or a simple commendation is a question to be solved by a search for the intention of the contracting parties. . . .. The question consequently is, in every case of this kind, whether the conditions were such that the vendee had the right to understand, and did so understand, that an affirmation or representation made by the vendor was meant as a warranty."

There seems to be in the law two rules, that come down to us: one known as the common law rule of *caveat emptor*, "purchaser beware," which is that the vendor in making the sale of personal property only warrants the title, and the vendee if he wishes more must have an express warranty, and the other comes down to us from the civil law and is *caveat venditor*, "vendor beware," which is that the vendor warrants the goods sold, and if he wishes to protect himself from the warranty must

make a limitation by express contract as to his liability. The court will see from the examination of the cases above referred to, that the courts that have held that an implied warranty is made on the mere sale of goods are following the civil law rule. The courts of Mississippi, however, have uniformly adopted the common law rule in all the cases that has been before it as to the sale of personal property. However, there has been no case in which the sale of seed was involved. We refer the court to the cases in which this doctrine has been established by the Mississippi courts as follows: *Brown* v. *Smith,* 5 H. 476; *Simmons* v. *Cutrer,* 12 S. and M. 584; *Long* v. *Higginbotham,* 28 Miss. 772; *Torm* v. *Smith,* 43 Miss. 497; *Cox* v. *Palmer,* 60 Miss. 793.

This is the rule where the vendor is neither the manufacturer or producer. *Ottis* v. *Alderson,* 10 S. and M. 476:

So we contend that the peremptory instruction should have been given for the following reasons:

First, because even if the court does not follow that rule, the evidence shows that no warranty was intended, and none was understood, and the minds of the parties did not meet on the question of warranty. This instruction is refused.

The court then gave instruction number one for the plaintiff, in which the jury was told, that if they believed from the evidence plaintiff went to defendant and asked for the early Detroit and Royal Pink tomato seed, and defendants sold the plaintiff a seed in response to his request and at the same time saying that they were the kind asked for, then as a matter of law defendants warranted that the seed sold were true to name.'' It will be thus seen that the court told the jury in effect that it made no difference what the circumstances might have been, and what might have happened if this was said the law made it a warranty, which is not true. The court then instructed for the defendants the very reverse of

this doctrine.  See first instructions for defendant:
"That in this case the jury must believe from the evidence that at the very time of the sale of the seed, that there was a contract of warranty either expressly made or impliedly made by the use of such words and language that it shows that the defendants intended to warrant the seed, and the plaintiff at the time understood that the defendant warranted them."  The court will see that the jury were instructed that as a matter of law that the defendants warranted the seed regardless of any intent, and in the other instruction told the jury that it didn't make any difference what words were used it was no warranty unless the defendants intended it to be warranted, and the plaintiff understood it to be warranted.

The court's attention is here called to the fact that the defendants testify that they intended no warranty and made none, and when the plaintiff was asked if he understood that a warranty was to be given, it was objected to and the court refused to make him answer, over the objection of the defendants.  It will thus be seen that the testimony is undisputed, that a warranty was not given nor intended.  We contend that this case should be reversed on this ground alone for these instructions are conflicting and confusing.

The first instruction for the plaintiff was practically a peremptory instruction, for there was no dispute but what defendant sold the seed claimed in the instructions, and it told the jury if they believe that as a matter of law they were warranted.  If the judge's idea of the law is correct that instruction should have been to find for the plaintiff and all the instructions for the defendant refused.

The court will see by an examination of the refused instructions on the subject of warranty that the court did not in our judgment follow even the authorities that adopted the civil law rule, because they based the decisions on the idea that where the purchaser called for a

specific kind of seed and there was nothing more said
that when the vendor produced the seed he impliedly
warranted that the seed delivered was true to name and
the trial court refused to instruct the jury along the line
that it made any difference what circumstances occurred
at the time of the sale showing the intent of the parties
not to warrant.

The second refused instruction was as follows: ''The
court instructs the jury for the defendant, that it makes
no difference what language may have been used by the
defendants at the time of the sale or before it, unless
they believe from the evidence that a warranty was in-
tended by the parties, of the seed, either expressed or
implied, and unless they believe that such warranty was
intended by the defendants, that they should find for the
defendants.''

The third refused instruction was as follows: ''That
if they believe from the evidence that the plaintiff told·
the defendants that the Detroit Acme and the Royal Pink
Tomato seed, would be used by the truck farmers and
plaintiff inquired several times to know if the seed had
come and was told that the seed had come and that they
got the seed out and opened them and the plaintiff ex-
amined them and the label on the sacks, and said I will
take six ounces of each kind, and thereupon the defend-
ants measured them out to him, and did not intend to
warrant to him expressly or impliedly that then the de-
fendants would not be liable for damages that might have
been suffered by plaintiff and the verdict of the jury
should be for the defendants.''

By refusing this instruction the trial court necessarily
ruled that even though plaintiff examined the label on
the sack, that the seed were not warranted, and the de-
fendants did not warrant them, still it made no differ-
ence, they were still liable for damages. If this is the
law, solvent dealers in seed will have to go out of busi-
ness and leave it to a class of insolvents. It denies the

civil law rule of *caveat venditor,* for there is no way that
the vendor can protect himself by an express notifica-
tion in writing, "I do not warrant the seed."

It is true the court gave the third instruction for the
defendants but the trial judge modified it, putting in it,
"and plaintiff did see the label thereon and read both,
inserting the words, 'read both.'" In other words it
makes no difference whether the dealer puts a label on
the seed that the seed is not warranted, unless the plain-
tiff reads it, they are still warranted. Here the label
was on the package and defendant examined it and how
could any one tell whether he read or not, except him-
self, and so it places the vendor at the absolute mercy of
the vendee.

The fourth instruction refused by the court was: "The
court instructs the jury for the defendant, that if they
believe from the evidence that the defendant ordered
the seed sold plaintiff, on the recommendation for plain-
tiff, from the Amzi Godden Seed Company of Birming-
ham, Alabama, and when they came, the plaintiff was
present when they were opened and there was labeled
on the packages the following language 'The Amzi God-
den Seed Company gives no warranty, express or im-
plied as to description, quality, productiveness or any
other matter of any seed, bulbs or plants they sell and
will not be responsible for the crop or results, and that
plaintiff knew this and read the same and defendants did
not expressly warrant them, and the plaintiff bought the
seed, then the defendant would not be liable, and the
jury should find for the defendant."

The court marked on this instruction that it was re-
fused because it had already been given. We submit it
had not been given before. The only thing that makes it
look like it had been given before is the third instruction
given for the defendant and the court will see the dif-
ference between the two is that in the refused one the
very language or the refusal to warrant is given and

the instruction given is placed on the basis that an express or an implied warranty was not given, and the refused instruction was that if he read the label then there could be no warranty unless it was expressly made.

We, therefore, submit it had not been given.

We again call the court's attention to the importance of the decision in this case, and to the fact that if the dealers in seed are subjected to the rule as declared by the trial court, they will have to go out of business, for if they cannot limit their liability by declaring there is no warranty, and if even a label is placed on the package, saying they are not warranted, and the courts make it depend on the fact whether the vendee read it or not, the vendor is at the mercy of the vendee, and they cannot take these chances. If they go out of business, it will leave the truck farmers to either produce their own seed or buy from a foreign house, and then the law of the state will govern where the sale is made and they will have to go there to sue. We submit that it would be better for the truck farmers to permit the law to remain as it has been understood to be and as the known custom, that is that there is no warranty given or understood, and let them depend on the competition in trade, rather than to establish the rule fixed by the trial court, that a warranty is given, whether intended or not, and thus drive the dealers out of the business, and force the persons planting vegetables, on however small a scale, to order from nonresident seed houses, with no more protection than they had before.

We contend that if the court concludes to sustain the warranty in this case, that still the case ought to be reversed on account of the wrong rule of damages being established by the trial court. It will be noted by the court that the rule that was adopted in this case was the difference between what he did make, and what he might have made if he had received the kind of seed called for.

We contend that this is speculative damages for the amount of crop that a man might make is dependent en-

tirely upon a number of circumstances, first, on the fertility of the land, second, on the amount and quality of the labor placed on it, third, the seasons, and fourth the market price and the quality of the product. All of these elements are uncertain, and problematic. The courts have uniformly ruled that speculative damages are not recoverable. *Myers* v. *Farrell,* 47 Miss. 281; *Marqueze* v. *Southeimer,* 59 Miss. 430; *Ragsdale* v. *R. R. Co.,* 46 Miss. 458; *White* v. *Leatherberry,* 82 Miss. 109.

In the case of Ragsdale against the Railroad Company, the question of damages was considered by the court at length, and laid down the rule that should govern, and the rule laid down by it is still the law of the state as the following, "fourth, losses of profits in a business cannot be allowed, unless the data of estimation are so definite and certain that they can be ascertained reasonably by calculation, and then the party must have had notice either from the nature of the contract itself or by explanation of the circumstances at the time the contract was made, that such damages would ensue from non-performance; fifth, if the contract is made with reference to embarking in a new business, the speculative profits which might be supposed to arise, but which were defeated in the case of breach of contract which delayed the business cannot be looked to as an element of damages.

We refer the court to the case of *Reiger* v. *Worth,* 80 Am. St. Rep. 798. This case in our judgment establishes the proper rule for damages. In this case the plaintiff bought of the defendant a quantity of rice, which he alleged the defendant represented to be good seed rice, but which was in fact not good seed rice, and which failed to sprout after having been planted, although the land was well prepared. The plaintiff demanded judgment for the amount paid for the rice, for the amount he expended in preparing the land, and in planting the rice, and for the amount of profit which would have been made

105 Miss. 20

by the plaintiff upon the anticipated crop, had the rice sprouted. The court in passing upon this question, after an exhaustive examination of all cases adopted the following rule for damages: "We think the rule for the measure of the plaintiff's damage in this case is the amount which he paid the defendant for the rice, the amount which he expended in the preparation of the soil for the crop, and for the planting or sowing of the seed, and because it was too late to plant another crop of rice, also to recover a reasonable rent for the land, the forty-seven acres for the year of 1898, subject to be reduced however by such amount as the defendant may be able to show that the plaintiff could have made on the land, for after it was too late to plant or sow rice, to be put in other crops than rice." To the same effect *Butler* v. *Moore,* 69 Ga. 780; 45 Am. Rep. 508. In the case of *Roberts* v. *Cole,* 82 N. C. 292 and cited in the above case it is said "The value of the crop made is capable of definite calculation, but what it would have made had it not been interfered with is and must be purely and wholly conjectural."

We submit the true rule to be:

1.  The cost of the seed.

2.  The cost of the fertilizers used.

3.  The value of the labor expended in the planting and cultivation.

4.  The rental value of the land; this to be reduced by the value of the inferior crop actually produced.

We submit that these elements of damages were not declared on, nor submitted to the jury; and therefore the case ought to be reversed.

*H. V. Wall,* for appellee.

Under the pleadings in this case there are only two questions to be considered. First, as to whether there was a warranty, express or implied, and, second, if there was a warranty, what was the measure of damages.

The question of whether or not there was a warranty was properly submitted to the jury under the instructions of the court. There is very little difference between appellee and appellant as to what happened between them when the seed were purchased. Whatever that difference might have been, however, was decided by the jury in appellee's favor. Appellant undertakes to defend the question of warranty on the ground that the house from which appellant purchased the seed in question was recommended by appellee. Appellee contends that this is no answer to his claim for damages, as will be seen by reference to the demurrer filed by appellee to the plea of appellant, to this effect. However, the court below overruled this demurrer, and that question was presented to the jury, and the jury found in favor of appellee. We contend that, under the law, there was an implied warranty on the part of the appellant that the seed sold by it to appellee were true to name, and of a certain kind and character. This is the general rule laid down by the courts. See *Springfield Shingle Co.* v. *Edgcomb Mill Co.,* 35 L. R. A., N. S. 258, and *Leonard Seed Co.* v. *Crary Canning Co.,* 37 L. R. A., N. S. 79. These are very recent cases, and the notes cited cover every case touching upon this subject. We, therefore, refer the court to these notes as to the law governing the question of warranty; and also the following cited cases: *Hoffman* v. *Dickson,* 105 Wis. 315; 76 Am. St. Rep. 916; 81 N. W. 491; *Wolcott* v. *Mount,* 38 N. J. K. 496; 20 Am. Rep. 425; *Rath* v. *Southwest Co.,* 158 Cal. 54; 109 Pac. 839; *Gubner* v. *Vick,* 25 N. Y. Weekly Digest, 356; 6 N. Y. S. R., 4; *Gardner* v. *Winter,* 117 Ky. 382; 63 L. R. A. 647; 78 S. W. 143; *Allen* v. *Lake,* 18 Q. B. 560; *Vanwick* v. *Allen,* 69 N. Y. 61; 25 Am. Rep. 136; *Depew* v. *Peck Hdw. Co.,* 121 App. Div. 29; 105 N. Y. Supp. 390; 1097 N. Y. 528; 90 N. E. 1158; *Frith* v. *Holland,* 133 Ala. 583; 91 Am. St. (Neb.) 54; 32 So. 494.

The doctrine of *caveat emptor* does not apply in a case of the sale of seed as will be seen by referring to the above cited authorities.

As far as we have been able to find, every authority holds that on the sale of seed, where the kind cannot be detected by looking at and feeling of the seed, there is a warranty by the seller that they are true to name and will produce, when planted, the kind as described, with the single exception of Pennsylvania and Montana. This is a good rule, as is shown in this case. It is impossible to distinguish one kind of tomato seed from another.

Appellee's experience as a tomato grower did not give him any advantage over appellant by looking at the tomato seed. It is contended by counsel for appellant that appellee's experience as a tomato grower gave him an advantage over appellant, but this cannot be true, in view of the facts in this case.

Appellant claims in its brief in this case that the seed sellers would have to go out of business if this court followed the rule laid down by the trial judge. This certainly cannot be an argument for the adoption of appellant's views of the law. In the trial of this case, the trial judge followed the cases that had been decided by every state in the Union that has passed on the subject, as above stated, with the exception of Pennsylvania and Montana. Counsel contends that it would ruin the seller if this rule were adopted. We contend that it would ruin the farmer if this rule is not adopted. Take for example: Suppose A should invest all that he had in the preparation of land for a tomato crop, and that his farm was located in a climate fitted only for a certain kind of tomato; he goes to B, a dealer in seed, and applies to him for the only kind of seed adapted to the soil and climate where A's farm is located. B says to A that he has the seed he wants, and sells A tomato seed, and A plants and cultivates them, and does all things necessary to make the crop a success. When they begin to fruit—that be-

ing the first time that A knows that instead of having the tomato seed he thought he was getting and that B told him he was buying—he finds he has a different tomato, not adapted to the climate or soil, which is not saleable, and A loses every cent that he has invested in this enterprise. Is it not a reasonable rule that B should be liable to A in damages? Take the case of *Wolcott* v. *Mount*, 36 N. J. L. 262, 13 Am. Rep. 438. In that case, the buyer called on the seller for a certain kind of beet seed for the purpose of selling a certain kind of beet on the early market of New York for human consumption. The seller sold a beet which was represented to the buyer as being the kind of beet that he wanted. The buyer planted the beet, did all things necessary for the development of the plant, and for the first time, when the beet was ready to go on the market, he discovered that instead of having a beet for human consumption, he had a stock beet, which was absolutely worthless to him. The court held in that case that the seller was liable to the buyer for damages, and this has been the rule adopted by New York, New Jersey, Nebraska, Kansas, California, Georgia, Massachusetts, Wisconsin, Arkansas, Florida, Kentucky, and every other state in the Union, and is the English rule, there being only two states in the Union holding the contrary doctrine, viz.: Pennsylvania and Montana.

In another case where Bristol cabbage seed was desired a seller sold a different kind of seed, the court held that the seller was liable to the buyer, and that the transaction constituted a warranty on the part of the seller. See *White* v. *Miller*, 71 N. Y. 118.

In another case where the purchaser desired rape seed of a certain kind, and the seller sold him a different kind of rape seed, the court held that the seller warranted the seed to be the kind desired. See *Hoffman* v. *Dickson*, 105 Am. St. Rep. 916.

The second proposition to be considered in this case is the measure of damages. We contend that the true rule

is, as set out in the declaration, the difference between the crop that would have been made, had the buyer received the kind of seed that he asked for, and the crop that was actually made. This was held to be the rule in the following cases: *Vaughan's Seed Store* v. *Stringfellow,* 48 So. Rep. 410, 30 Am. and Eng. Ency. Law (2d Ed.), 219; *Wolcott* v. *Mount,* 36 N. J. L. 262, 13 Am. Rep. 438; *White* v. *Miller,* 71 N. Y. 118, 27 Am. Rep. 13; *Passinger* v. *Thornburn,* 34 N. Y. 634, 90 Am. Dec. 753; *Depew* v. *Peck Hdw. Co.,* 121 App. Div. 28, 105 N. Y. Supp. 390.

The weight of authority establishes this rule. However, the Georgia court adopted a different rule, but upon a different statement of facts.

Counsel for appellant claims that the true measure of damages is the cost of the seed, cost of the fertilizer used, value of the labor expended in the planting and cultivation, and rental value of the land. This might be true under a certain statement of facts, as was held in the Georgia case, but it is not the true rule as laid down by the majority of the courts in the Union, and is not the true rule even according to the Georgia decision cited by counsel.

Take the facts in this case: The evidence shows that in a four acre field, in the same row there were two or three good plants and two or three inferior plants. It would have been impossible for appellee to have fertilized or worked for the good plant without doing the same thing for the bad plant. The exact measure of damages could not have been estimated in any other way except by the gross difference in the value of the crop that would have been made had appellee had the kind of seed he thought he was buying, and the gross value of the crop he did make by having the inferior seed. The measure of damages, according to this rule can be had with almost exactness. For instance, with the same kind of land, same climatic conditions, same kind of cultiva-

tion and same kind of fertilizer applied in this case to the bad plant as applied to the good plant. So you could take and measure what was made of the good plants and get almost exactly what would have been made had all the plants been of good variety, and that is exactly what was done in this case.

The court will see from the record in this case that both parties are appealing, and both parties claiming that they should have had a peremptory instruction. The appellee claims that he should have had a peremptory instruction to find for him under the evidence in this case, and that his measure of damages should have been not less than fifty per cent of what he would have made, had he gotten the kind of seed that he thought he was buying.

Mississippi is an agricultural state, and the farmer is now changing from the raising of cotton to the raising of truck, and it is very important for the farmer that he have some protection in the buying of his vegetable seed, because, if he is not, he subjects himself every year to the loss of everything that he invests in preparations for growing vegetables. We, therefore, contend that the question of warranty was properly submitted to the jury, and that the measure of damages was properly submitted to the jury if we were not entitled to a peremptory instruction. If both sides are in error as to the measure of damages, the verdict in this case cured any error that might have been made by the court, as the jury heard all the facts and they decided that appellant was damaged, and that the measure of his damage was one hundred dollars. However, it is appellee's contention that he was damaged more than the jury gave him, and that the case should be reversed and the measure of his damage fixed at a larger sum than the jury fixed it. The question of warranty has been settled by the jury, and under the rules adopted by the supreme court, if the case is to be reversed at all, it should be reversed only on the question of the measure of damages, and appellee claims that he

should have a peremptory instruction, under the evidence in the case as it now stands, for the full sum as asked for by his instruction.

Argued orally by *H. V. Wall,* for appellee.

SMITH, C. J., delivered the opinion of the court.

A sale of seed by name raises an implied warranty that it is true to name; and the fact that the buyer inspected the seed before purchasing is immaterial, when its character cannot ordinarily be ascertained by any reasonable inspection.  Note to *Leonard* v. *Crary Canning Co.,* 37 L. R. A., N. S. 79, 35 Cyc. 409-411, 30 Ency. of Law, 2d Ed., 157, par. 7, *Id.* 159, par. 1 of subdivision XI, *Id.* 612, par. 5.

That the person from whom the seller had himself purchased the seed declined to warrant to him that it was true to name is immaterial, although this fact was known to the last purchaser; his warranty not being in any wise dependent upon the existence *vel non* of a warranty to the person from whom he himself purchased. At most, such a fact is only a circumstance, to be considered along with other evidence, if such there be, indicating that the last sale was made upon an express or implied agreement that no such warranty should result therefrom.

Where seed is sold with warranty that it is true to name, the measure of damages for a breach thereof, when it is actually sown and produces a crop, not harmful to the land, but of less value than would have been produced, had the warranty not been broken, is the value of the crop, such as the seed was warranted to produce, and would ordinarily have produced, less the value of the crop actually raised from the seed purchased.

The court below having tried this cause in accordance with the foregoing views, its judgment is affirmed.

*Affirmed.*