E. P. MOORHEAD v. MINNEAPOLIS SEED COMPANY.
JOSEPHINE MATTHEWS v. SAME.[1]

December 14, 1917.

No. 20,499.

**Sale — oral warranty — printed disclaimer.**

1. The evidence sustains a finding of the jury that in the course of negotiations with the plaintiffs the vice president and general manager of the defendant corporation made an oral warranty of the germinating power of seed-wheat sold them; and the effect of such warranty was not as a matter of law annulled by printed disclaimers of warranty in the letter of confirmation, invoice and shipping tags, though the contract was oral and within the statute of frauds.

**Corporation — authority of general manager to make warranty.**

2. The vice president and general manager of the defendant, who had general charge of its office and plant, had authority to bind it by a warranty, though the making of warranties on the sale of seed-grain was contrary to the custom of the trade.

[1]Reported in 165 N. W. 484.

**Sale — measure of damages for breach of warranty.**

> 3. Where there is an entire failure of germination, and therefore no crop, the measure of damages for the breach of warranty of germination is the amount paid for the seed, plus the cost of planting, plus the value of the use of the land for the cropping season, less the value of its use for a proper purpose to which it might reasonably have been put upon the ascertainment of a failure of germination, and not the value of the crop which would have been raised if the seed had been true to warranty less the cost of planting and producing.

**Same—quaere, whether finding is sustained by evidence.**

> 4. Whether the evidence sustains a finding that there was a breach of warranty in respect of the germinating power of the seed is questioned but not decided.

Two actions in the district court for Hennepin county to recover $6,343.40 and $746.40, respectively, for breach of warranty. The answers alleged that if, on or about the time alleged in the complaint any wheat was sold and delivered by defendant to plaintiff and was by him planted and failed to germinate and grow, such failure was wholly caused by the wilful or careless and negligent acts, omissions and conduct of plaintiff, his agent, tenant and representative in choosing the season and time of planting such wheat, and in selecting, cultivating and preparing the soil for planting the same, and in handling, treating and preparing said wheat for planting, after its delivery to and before its planting by him, and also by reason of the nature and quality of the soil where planted—the same being unfit for the production of wheat—and the conditions of the atmosphere and weather. The cases were tried before Leary, J., who denied defendant's motions for a directed verdict in each case, and a jury which returned verdicts for $2,839.14 and $408.30, respectively. From an order denying its motions for judgment notwithstanding the verdicts or for new trials, defendant appealed. Reversed.

*Koon, Whelan & Hempstead,* for appellant.
*George C. Stiles* and *D. C. Edwards,* for respondents.

DIBELL, C.

These two actions to recover for the breach of an express warranty of the germinating power of seed-wheat were tried together and there

were verdicts for the plaintiffs. The defendant appeals from the order denying its alternative motion for judgment or a new trial.

The questions are these:

(1) Whether the evidence sustains a finding that an express warranty on the sale of seed-wheat was made on behalf of the defendant by its vice president and general manager; and in connection with this the effect of disclaimers of warranty printed on the letter-head confirming the sale, on the invoice, and on the shipping tags.

(2) Whether, in view of the custom not to warrant the germinating power of seed sold, the vice president and general manager had authority to bind the defendant by a warranty.

(3) Whether the measure of damages, there being an entire failure of germination and a consequent total loss of crop, is the value of the crop which would have been raised had the seed been true to warranty, less the cost of planting and producing, or the cost of the seed, plus the value of the use of the land, plus expenses incurred, less the value of the use of the land after the failure of germination.

(4) Whether the evidence sustains a finding that the seed was lacking in germinating power.

1. About April 1, 1915, the plaintiffs entered into negotiations with the defendant through R. M. Johnston, its vice president and general manager, for the purchase of blue stem seed-wheat for the seeding of their farms near Anamoose, North Dakota. Their testimony is that they told him that they had had trouble with germination, and inquired whether he would guarantee the seed which he proposed selling, and that he then warranted it to be of 99 per cent germinating power. By common understanding the question of purchase was left open and was shortly afterwards closed over the telephone by an acceptance by the plaintiffs. By letter of April 6, the sale was confirmed in the usual way. At the top of the letter of confirmation was printed the following:

"We give no warranty, expressed or implied, as to description, quality, productiveness, or any other matter, of any seeds we send out, and we will not in any way be responsible for the crop. If purchaser does not accept the seeds on these terms, they are to be returned at once. * * * No complaints received after ten days from receipt of goods."

The wheat was sold f. o. b. and was delivered to the plaintiffs on April

6, on board a Soo car, the invoice was dated on that day, the bill of lading was issued to one of the plaintiffs on April 7, they prepaid the freight, the price was paid the defendant probably on April 8, and the wheat reached Anamoose on April 13 and was accepted by the tenants of the plaintiffs and used in seeding. The invoice contained a printed disclaimer of warranty similar to that on the letter of confirmation and a like disclaimer was on the shipping tags on the reverse side of the address.

Johnston denies that a guaranty was asked or given, but says that there was some talk about germinating tests. No warranty was given in the letter of confirmation, but the results of germination tests were stated and so far as appears were truthful. It is the contention of the defendant that taking the evidence as a whole it is insufficient to sustain a finding of a warranty; and it relies considerably upon the disclaimers of warranty. The contract of sale was oral and within the statute of frauds and invalid until acceptance of the wheat or payment. Payment and acceptance pursuant to the contract satisfied the statute. Scott v. T. W. Stevenson Co. 130 Minn. 151, 153 N. W. 316; Perkins v. Thorson, 50 Minn. 85, 52 N. W. 272. Until payment or acceptance the contract was not complete or binding, a new term might be imported into it, or a term important in the negotiations might be eliminated at the will of either.

The defendant cites on the question of disclaimers of warranty a line of cases of which Ross v. Northrup, 156 Wis. 327, 144 N. W. 1124; Blizzard Bros. v. Growers' C. Co. 152 Iowa, 257, 132 N. W. 66; and Seattle Seed Co. v. Fujimori, 79 Wash. 123, 139 Pac. 866, may be taken as typical. Some of the cases of this character bear upon the question of an implied warranty that what is sold is true to variety or trade-name. Here there is no question of implied warranty. The cases do not go so far as to hold that if an express warranty is made its effect is obviated by the use of letters or invoices or shipping tags on which disclaimers are printed. We would not expect such a holding. These disclaimers are evidentiary in support of the defendant's contention. That far they should have effect. They are not conclusive. If a warranty was actually made, during the negotiations, and not withdrawn or modified, it should be given effect irrespective of the printed disclaimers. See Edgar v. Joseph Breck & Sons, 172 Mass. 581, 52 N. E. 1083.

The evidence in support of the warranty is not particularly convincing. There is much to indicate that the parties were talking about germinating tests and not of a warranty of germinating power. However, there is evidence that the plaintiffs wanted to buy a warranty as well as seed and that Johnston undertook to promise germinating results. The jury might well enough have found that there was no such promise, but instead they found that there was. We are dealing with a finding of the jury approved by the trial judge, who was in much better position than we are for judging testimony, and not with what we may think from a reading of the evidence might as well or better have been found. We hold that the evidence sustains the finding.

2. The next question is upon the authority of Johnston to make a guaranty binding upon his corporation.

The argument of defendant is that when a custom of the trade not to warrant is shown, and here there was evidence of such a custom which for the purposes of this appeal we assume to be conclusive, authority to warrant cannot be implied. The theory is that implied authority in a selling agent to warrant comes from the fact that sales in the particular trade are commonly made with warranty and when such is not the custom authority cannot be implied. Upton v. Suffolk County Mills, 11 Cush. 586, 59 Am. Dec. 163; Wait v. Borne, 123 N. Y. 592, 25 N. E. 1053; Bierman v. City Mills Co. 151 N. Y. 482, 45 N. E. 856, 37 L.R.A. 799, 56 Am. St. 635; Waupaca Electric Light & Ry. Co. v. Milwaukee Elec. Ry. & L. Co. 112 Wis. 469, 88 N. W. 308; 2 C. J. 601; 31 Cyc. 1353; 30 Am. & Eng. Enc. (2d ed.) 165; Williston, Sales, § 445; 2 Mechem, Sales, § 1281, et seq.

Johnston was the vice president of the corporation and its general manager. He was in charge of its offices and plant. It does not appear that any other executive officer was about. So far as can be seen one dealing with him was as near the corporate entity as he could get. Unless a purchaser could take a warranty from him he could get none from anyone. There was somewhere corporate power to warrant. Conceding the rule of law claimed, and that a custom not to warrant was conclusively proved, we are of the opinion that a vice president and general manager, having such charge of the company's operations and such general

authority as is shown, has implied authority to make a warranty binding the corporation.

3. There was no germination and the failure of crop was total. The court held that the measure of damages was the value of the crop which would have been raised had the seed been true to warranty, less the expense of planting and producing. The defendant contends that the measure, where the loss is total, should be based upon the value of the use of the land of which the owner is deprived, plus the value of seed-grain used and expenses incurred, and less any value in the use of the land after the failure of the seed to germinate.

Where there is a partial crop, or a crop of different variety than that promised by the warranty, the proper measure is the difference in value between the crop raised and the crop which would have been raised had the seed responded to the warranty. Randall v. Raper, Ellis, B. & E. 84; Wolcott, Johnson & Co. v. Mount, 36 N. J. Law, 262, 13 Am. Rep. 438; Passinger v. Thorburn, 34 N. Y. 634, 90 Am. Dec. 753; Landreth v. Wyckoff, 67 App. Div. 145, 73 N: Y. Supp. 388; White v. Miller, 71 N. Y. 118, 27 Am. Rep. 13; Edgar v. Joseph Breck & Sons, 172 Mass. 581, 52 N. E. 1083; Dunn v. Bushnell, 63 Neb. 568, 88 N. W. 693, 93 Am. St. 474; Moody v. Peirano, 4 Cal. App. 411, 88 Pac. 380; Buckbee v. P. Hohenadel, Jr. Co. 224 Fed. 14, 139 C. C. A. 478, L.R.A. 1916C, 1001; Grafton-Stamps Drug Co. v. Williams, 105 Miss. 296, 62 South. 273; Cline v. Mock, 150 Mo. App. 431, 131 S. W. 710; American Warehouse Co. v. Ray (Tex. Civ. App.) 150 S. W. 763.

Where there has been no germination it has been held that the damages should be measured by the cost of the seed, plus the cost of planting, plus the value of the use of the land, less any value in the use remaining at the time the seed failed to germinate. Reiger v. Worth, 127 N. C. 230, 37 S. E. 217, 52 L.R.A. 362, 80 Am. St. 798.

It is manifest that where there is a partial crop, and that is the usual case, the first measure is the true one. There is no other. Some of the cases involving partial failures and applying the first measure distinctly state that the second measure is the true one when the loss is total. Vaughn's Seed Store v. Stringfellow, 56 Fla. 708, 48 South. 410; Ford v. Farmers' Exchange, 136 Tenn. 287, 189 S. W. 368, L.R.A. 1917B, 1106. Still there are cases applying rather as a matter of course and

without discussion the first measure when the failure is total. G. B. Shaw & Co. v. Smith, 45 Kan. 334, 25 Pac. 886, 11 L.R.A. 681; Crutcher & Co. v. Elliott, 13 Ky. Law R. 592; Van Wyck v. Allen, 69 N. Y. 61, 25 Am. Rep. 136; Depew v. Peck Hardware Co. 121 App. Div. 28, 105 N. Y. Supp. 390. The question does not often arise and is hardly considered in the cases cited. It is considered in treaties with scant recognition of the distinction and there are few cases illustrating it. Williston, Sales, § 614; 2 Mechem, Sales, § 1827, et seq.; 1 Sutherland, Damages (4th ed.) § 61; 1 Sedgwick, Damages (9th ed.) § 191; 2 Sedgwick, Damages (9th ed.) § 768; 3 Joyce, Damages, § 1707; 35 Cyc. 479; 30 Am. & Eng. Enc. (2d ed.) 219; 43 Cent. Dig. Sales, § 1294; 17 Dec. Dig. Id. § 442 (11).

Writers, so far as they meet the question at all, join in approval of the second measure stated when the failure is entire. 1 Sedgwick, Damages (9th ed.) § 191; 2 Sedgwick, Damages (9th ed.) § 768; 30 Am. & Eng. Enc. (2d ed.) 219; 35 Cyc. 479.

The object of the law is to furnish a measure which will give as near as may be actual compensation for the breach and which is free of uncertain, contingent, conjectural or speculative elements. When damages are based upon the value of the use of the land the uncertainty of amount because of uncertainty of crop results is eliminated and they may be assessed forthwith. We are of the opinion that when the failure of crop is entire, because of a failure of germination, the damages should be based on the value of the use with additions and deductions suiting the conditions of the particular case. The objection suggested by the plaintiffs that there was no fixed rental value in North Dakota is without substantial merit. There need be no market rental value. It is enough if the use value is determined and that may be found without the aid of a market value. Farmers and others qualified to testify may furnish proof of value. In Nelson v. Minneapolis & St. L. Ry. Co. 41 Minn. 131, 42 N. W. 788, Justice Mitchell, in a case involving a question of at least as great difficulty, said:

"What the law aims at is compensation; and the matter of ascertaining the rental value, or how much it has been depreciated, is a practical question, to be treated in a practical way, and to the consideration of which it is necessary to bring a little of the farmer as well as the lawyer."

139 M.—2

4. The defendant contends that the finding of the jury that the seed lacked germinating power is unsustained by the evidence. The situation presented is peculiar. The seed was bought for three farms, the Moorhead farm, the Mathews farm and the Roberts farm. It was put into separate sacks and those intended for each of the farms was separately designated by the shipping tags. It was shipped in one car to Anamoose. One Okert, who was the tenant for Moorhead and Mathews, hauled the seed for their farms. One Budeau, who was the tenant of Roberts, hauled the seed for the Roberts farm. Okert planted the Moorhead and Mathews farms and the seed failed to germinate. Before planting he submitted it to a formaldehyde treatment. Budeau planted his without treatment and it grew well. Altogether 475 bushels went to the Moorhead, Mathews and Roberts farms. It came, as the evidence tends to show and perhaps shows conclusively, from a mass of 752 bushels in the defendant's warehouse. The left 277 bushels. Of this amount 273 bushels were delivered at Madison Lake, Minnesota, and planted by 12 different farmers. All of it grew well. The remaining 4 bushels are not accounted for. Budeau had 5 bushels left. He let Okert have this and he planted it on the Mathews land after submitting it to the formaldehyde treatment. It grew well. The growing season and soil conditions were good. Other wheat planted by Okert and submitted to the formaldehyde treatment grew. The seed furnished was good in appearance. It is claimed by the defendant that the formaldehyde treatment destroyed the germination. There is evidence that this treatment should be applied with some caution and that there is some danger attendant upon its use. It is difficult to understand how seed wheat of almost any kind, and especially that having the appearance of this, would fail to germinate to the extent claimed, that is, not a few per cent of it but more than 95 per cent. The formaldehyde treatment may be attended with some danger, but it is difficult to understand how its ordinary use could destroy not a small percentage of it but 95 per cent. There is some difficulty in saying that the evidence sustains a finding that the wheat was without germinating power. There must be a new trial for the reasons stated in paragraph 3 and we leave the question of the suffi-

ciency of the evidence to show lack of germinating power undecided.
Additional evidence may be produced at another trial. It is not at this
time a case for judgment notwithstanding.

Order reversed.