## IVAN L. FREDERICKSON v. J. M. HACKNEY.[1]

April 25, 1924.

No. 23,945.

**Trade talk not equivalent to express warranty of bull calf.**
1. Representations by the seller of a bull calf that he would be a "wonderful asset" to the buyer and "would put him on the map;" that "his father was the greatest living dairy bull" and that he would help to build up the buyer's herd, *held* to be "trade talk" and not to amount to an express warranty of the procreative ability of the calf at his maturity.

**No implied warranty.**
2. In such a case there is no implied warranty that the animal will possess at his maturity the requisite procreative ability.

Action transferred to the district court for Ramsey county to recover $12,550 for breach of warranty. The case was tried before Bechhoefer, J., who at the close of the testimony granted defendant's motion for a directed verdict. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*George E. Young* and *Carl C. Wheaton*, for appellant.
*Christofferson, Walsh, Christofferson & Jackson*, for respondent.

STONE, J.
Action by the purchaser for the breach of an alleged warranty of a Holstein Freisan bull calf. There was no express warranty and a verdict was directed for defendant on the ground that no implied warranty existed. Plaintiff appeals from the order denying his motion for a new trial.

Both plaintiff and defendant are breeders of thoroughbred Holstein Freisan cattle. Plaintiff purchased two cows from defendant. Both were with calf when delivered to him. Defendant had reserved the calves to himself, but, a few days after birth of the male in question, plaintiff purchased him of defendant for $500. The

[1]Reported in 198 N. W. 806.

ancestry of the calf was such as to justify this price, the assumption of both parties being of course that he would be a sure calf-getter when he attained his maturity. The fact proved otherwise and instead of having a sire of high priced cattle, plaintiff found himself with a sterile bull of no value save for beef, and of little value even for that.

There is a claim of an express warranty, but none of the language used by defendant and upon which plaintiff claims to have relied, was used with intent to warrant anything. Plaintiff was advised by defendant to "buy this bull and keep him" for breeding purposes; that he would be a wonderful asset and would put him "on the map." "He told me further of his blood lines and what a great record his relatives had made * * *; that his father was the greatest living dairy bull;" that if I would keep him, of course, he would be a help to build up my herd.

There is nothing in that language indicating the intent of defendant to warrant the future reproductive capacity of the calf. Defendant had no right to rely upon it as such. It was trade talk of the conventional and permissible type and cannot be expanded into a warranty simply because the unusual happened and the expectations of both parties were disappointed.

There can be no more appropriate occasion for the adoption of the rule of "caveat emptor" than the sale of an inmature animal, the principal value of which depends upon its later becoming a breeder. Sterility is the exception. Still there are many contingencies attending the adolescence even of brutes that would make it an anomalous thing to impose upon a vendor, who parts with the possession and responsibility for the rearing of the animal, the liability of having the sale rescinded in the event that, at maturity, the animal proves to be sterile.

The general rule, even as to mature animals, is that:

"There is no implied warranty of competency or fitness for breeding purposes in the sale of an animal, although a full price is paid and the sellers know that it is bought for breeding purposes, where there is no fraud or misrepresentation and both parties are alike

destitute of knowledge or the means of forming an intelligent judgment as to the fitness or capacity of the animal for that purpose. In such a sale it seems that custom, policy, and law unite in applying the maxim of caveat emptor, and that the purchaser takes the animal upon his own judgment, risking both the quality and the value of it." 1 R. C. L. 1085.

See also Scott v. Renick, 1B Mon. (Ky.) 63, 35 Am. Dec. 177; Griffin v. Runnion, 74 W. Va. 641, 82 S. E. 686; and White v. Stelloh, 74 Wis. 435, 43 N. W. 99.

Implied warranties ordinarily speak concerning the present and give assurance only, as to qualities existing at the time being. They do not ordinarily speak of the future, nor of qualities later to be developed. That is the conventional field for express rather than implied warranty.

"The doctrine of implied warranty appears to be founded on an actual or presumed knowledge by the vendor, as manufacturer, grower, or producer, of the qualities and fitness of the thing sold for the purpose for which it was intended or is desired, so far as such knowledge is reasonably attainable. The rule must be held to have a rational foundation, and to be not of a purely arbitrary character. It does not impute to the seller knowledge as to qualities or fitness which no human foresight or skill can attain, and raise an implied warranty in respect to them when the vendor and purchaser are in equal condition as to means of knowledge, or the latter must have understood from the nature of the case that the information, experience, and knowledge of the vendor are not superior to his own." McQuaid v. Ross, 85 Wis. 492, 55 N. W. 705, 22 L. R. A. 187, 39 Am. St. 864.

While that statement may not sufficiently emphasize the seller's knowledge that the article will be valueless to the purchaser unless fit for a particular purpose, it shows the utter impossibility, in reason, of creating an implied warranty in a case of this kind, where neither party can know anything about what the future will prove concerning the particular qualifications expected and desired in the subject matter of the sale.

Authorities urged to the contrary are the "jack cases" from Missouri. In a recent one, Neal v. Crowson (Mo. App.) 231 S. W. 1033, the decision was put upon the proposition that it is a matter of common knowledge among breeders that a jack has no value except for breeding purposes and therefore that the law implies a warranty that jacks are reasonably fit for that purpose.

There is much reason in that view as applied to the sale of a mature male, or possibly to one so near maturity that the intention is soon to use him as a sire. But it cannot apply to the sale of one only a few days or a few weeks old, and from 15 to 18 months removed from the first possibility of even limited use for breeding purposes.

The Uniform Sales Act does not change the rule, [section 6015] —15, 1917 Supp., does create an implied warranty that the goods shall be reasonably fit for specific purposes, "where the buyer expressly or by implication, makes known to the seller the particular purpose for which the goods are required *and* it appears that the buyer relies on the seller's skill or judgment." That does not apply here for two reasons: (1) This animal was not purchased for immediate breeding purposes. Defendant bought him to raise and ultimately to use as a sire. In such a case, the statute does not import a warranty against the contingencies of nature, one of which is the possibility that an animal may be impotent. (2) There is no claim here that plaintiff relied on the seller's skill or judgment. Both parties are experienced cattlemen and neither of them knew, although both supposed, that this particular individual would be, at maturity, effective as a sire.

Order affirmed.