## D. L. HEIL v. STANDARD CHEMICAL MANUFACTURING COMPANY.

223 N. W. 2d 37.

October 4, 1974—No. 44478.

316

*Irving Nemerov, Angstman & Loren,* and *Norman J. Loren,* for appellant.

*Nord, Webster & Brennan* and *David Nord,* for respondent.

Heard before Rogosheske, Todd, Scott, and Knutson, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an action for damages against defendant feed company for breach of express warranties, one that a feed supplement would produce a 2-pound-per-day weight gain in feeder calves

and a second that another product would cause the animals to mature so that they could be bred. The jury awarded damages on both claims. A motion was then made by defendant for judgment notwithstanding the verdict or, in the alternative, for a new trial. The alternative motion for a new trial was granted with respect to the claimed breach of warranty based on the failure of the cows to conceive, but denied with regard to the breach relating to the expected weight gain of 2 pounds per day. It is from this denial that defendant appeals. We reverse and grant a new trial.

The defendant initially commenced an action to collect the unpaid balance of plaintiff's bill for cattle feed purchased from the defendant. In a proposed amended answer, plaintiff counterclaimed for breach of express warranty. By stipulation of counsel, the alleged balance was admitted to be correct and judgment was entered. The cause of action claimed by plaintiff's counterclaim is thus the subject of this separate action. The complaint alleges two distinct claims: (1) That the defendant breached an express warranty regarding a feed product allegedly warranted to produce a 2-pound-per-day weight gain in feeder calves and (2) that the warranty that plaintiff's cows would be able to conceive upon being fed another product was breached when a certain number of them failed to become pregnant.

The defendant, Standard Chemical Manufacturing Company, has its principal place of business in Omaha, Nebraska, and owns a mill at Marshall, Minnesota. The company has been transacting business within this state for 86 years. The plaintiff, D. L. (Tex) Heil, has been involved in the breeding and raising of livestock since 1951. In 1963, Heil and his son Donald moved from Texas to Minnesota and purchased a cattle ranch near Onamia, Minnesota. A feedlot at Glencoe, Minnesota, was later purchased as a location for plaintiff's cattle during the winter months. This feedlot was managed by Donald from 1967 until 1970, and at all times material to this action.

Two representatives of defendant company, Loren Amidon

and Lester Hesse, visited plaintiff and his son at various times during the fall of 1970 to suggest and solicit orders for supplementary cattle feed. During a later business discussion, plaintiff mentioned that, as he had knowledge of another livestock owner who had realized a 2-pound weight gain per day with his calves, plaintiff also would like such results. The plaintiff claims that this expectation was promised, and Amidon, the company's agent, specifically denies it.

During the following months, tests were conducted to determine the necessary composition of any suggested feed supplement. The tests were conducted to determine the protein, calcium, phosphorus, and moisture content of plaintiff's sweet corn and silage. The tests showed the silage to be low in protein, calcium, and phosphorus, while the sweet corn showed a good protein count. Based upon the figures given to defendant's agents by plaintiff, Hesse estimated a ration that would feed approximately 700 calves over the winter months to produce the expected weight gain.

According to plaintiff, the feedlot served the following number of cattle over the winter months: 686 calves born in the spring and summer, 700 brood cows which had given birth to these calves, 100 replacement heifers, 99 Brahma cows purchased in July, approximately 100 calves from these Brahma cows, and 81 bulls for a total of about 1,766 cattle.

During the year in question, the plaintiff's son testified, the use of defendant's products produced a rate of weight gain of .93 or .97 pound per day. This was based upon a weight of 375 to 400 pounds per cow upon the animals' arrival at the feedlot. The appellant-defendant points out that these figures were merely estimates, and that plaintiff was unable to introduce any factual support for these statements. Further, Hesse testified that he had estimated the weight of the calves upon arrival at the feedlot to be from 275 to 375 pounds.

With regard to the contact between defendant's agents and plaintiff, it was testified that Hesse visited the feedlot often to

inquire as to the performance of the recommended feed supplement. There is some conflict in the testimony as to the regular procedures used by the plaintiff regarding the use of hay in the feeding. Defendant's agents claim that their visits showed that an insufficient supply was used, while plaintiff stated that a large amount of hay was purchased, stored, and fed to the cattle at the lot. Defendant's agents further stated that the weather conditions were far from optimal during the fall of 1970, while plaintiff's son stated that the winter that year had less snow than usual.

In March, plaintiff had exhausted the supply and placed another order. This order was subsequently canceled when plaintiff attempted to reduce his outstanding bill with defendant company. Due to pressing financial problems, plaintiff sold the majority of the herd in May 1971.

Although there is some dispute, defendant's agents testified that throughout the year plaintiff and his son expressed much satisfaction with defendant's products.

There appear to be two issues in this case that are controlling:

(1)   Is there evidence to support the jury's finding that there was an express warranty based upon the alleged representations of defendant company?

(2)   Is there evidence to support the jury's finding that it was this breach of warranty and not the combination of a number of other factors which proximately caused the calves' failure to gain the weight as expected?

■   Minn. St. 336.2—313 sets forth the statutory requirements to be applied in determining whether an express warranty has been created. It provides:

"(1)   Express warranties by the seller are created as follows:

(a)   Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b)   Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c)   Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(2)   It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

This court has often faced the issue of whether a particular statement can be construed as a warranty, or whether it is mere "trade talk" or "puffing." It appears, after a careful reading of authorities cited by the defendant-appellant, that its major contention is that such statements or comments were merely opinions and within the established meaning of "trade talk" or "puffing." Cited in support of this is the following language from 77 C. J. S., Sales, § 310 c:

"While, generally speaking, * * * any direct, positive, and unequivocal affirmation or representation of fact with reference to the thing sold may give rise to a warranty, affirmations or representations which merely express the seller's opinion, belief, judgment, or estimate do not constitute a warranty, no matter how strong the affirmation or representation may be, and the Uniform Sales Act expressly provides that no statement purporting to be a statement of the seller's opinion only shall be construed as a warranty. Under the established and governing rules, dealer's talk is permissible; and puffing, or praise of the goods by the seller, is no warranty, such representations falling within the maxim simplex commendatio non obligat."

Defendant attempts to place the burden of the requested weight

gain upon the plaintiff, stating that it was he who set the standard which the defendant tried to meet.

The cases of Frederickson v. Hackney, 159 Minn. 234, 198 N. W. 806 (1924), and Carpenter v. Alberto Culver Co. 28 Mich. App. 399, 184 N. W. 2d 547 (1970), cited by defendant, do indeed clearly evidence examples of mere opinion. However, to equate those statements with these in the instant case seems to be a far-reaching conclusion. The issue here is much more complex.

The facts before us present a plaintiff with over 20 years' experience in the livestock-raising business and a defendant who purportedly trained its agents to recognize feeding and conception problems and to suggest feed supplements to aid in their cure. The disparity is relatively minimal, yet it would appear that if the balance should fall to one or the other side, the defendant should be in the better position to diagnose and posit results for the buyer's approval or rejection.

In Baumgartner v. Glesener, 171 Minn. 289, 214 N. W. 27 (1927), the facts indicated that, in advertising seed corn for sale, the grower represented that 95 percent of a tested portion of the seed had germinated. Relying upon the representation, a farmer purchased and planted the corn, much of which failed to germinate. In a suit against the grower for breach of warranty, the court instructed the jury that the corn was sold with a warranty as to its quality as seed. This court held that the instruction was proper in that the advertisement constituted an express warranty. It was made for the purpose of selling the corn, and was relied upon by the farmer.

In the case before us, it appears that there was a similar inducement to plaintiff to change brands of feed supplement. It may be argued that had he desired to maintain the level of weight gain that he was experiencing, he would have been content to continue to use Hubbard's feed supplement, which he had used in 1968 and 1969. However, when confronted with what appears to be a statement of guaranteed increased growth, he switched over to defendant's product. It therefore appears that the repre-

sentation at least operated as an inducement for Heil to buy, if not more.

A case which must be considered is Cook Livestock Co. v. Reisig, 161 Neb. 640, 74 N. W. 2d 370 (1956). When faced with a factual situation similar to ours, in that the dealer allegedly stated to the buyer that the use of its feed would fatten his cattle in 120 days, the court stated (161 Neb. 650, 74 N. W. 2d 376):

"* * * Cook's statement that the feed would fatten defendant's cattle could not be considered a statement of fact. Such a statement is nothing more than Cook's opinion that the feed would fatten these particular cattle in that period of time, and under the statutes could not be considered as a warranty, nor under the law as a representation of a present or preexisting fact. At most, the statements made by Cook with reference to the feed were only his opinion and nothing more. The defendant has failed to meet the burden of proof placed on him."

The statutes in question were substantially the same as that before us, and present was the additional fact that the defendant-buyer himself had selected the composition of the mixture that he had decided to use in the fattening-up process. The testimony of several witnesses indicated that the feed as prepared should have produced the requested weight gain. The only reliance by the buyer was upon a substitute for one of the ingredients which should not have minimized the desired results. With this in mind, the court concluded as above.

In considering the Cook case with our situation in mind, it appears that the determining effect of the case is lessened. Not only did the buyer here rely solely upon the judgment of defendant in composing the supplement, there are several other facts which distinguish this case and make the action a matter for jury determination. For example, unlike the Cook situation, there was no evidence that the mixture should have produced the anticipated weight gain, and further, defendant here denies ever making such a statement to plaintiff.

In a case with remarkably similar evidence and disputes, the court reached several interesting conclusions. Moorhead v. Minneapolis Seed Co. 139 Minn. 11, 165 N. W. 484 (1917). The plaintiffs entered into negotiations with an agent of the defendant seed company to purchase seed. The plaintiffs allegedly told the representative that they had had problems with germination and inquired whether defendant would guarantee the seed. The agent allegedly warranted 99-percent germinating power. The defendant denied this guarantee and the court was faced with a determination as to whether the evidence sustained the finding that there was an express warranty. The court stated (139 Minn. 15, 165 N. W. 485):

"The evidence in support of the warranty is not particularly convincing. There is much to indicate that the parties were talking about germinating tests and not of a warranty of germinating power. However, there is evidence that the plaintiffs wanted to buy a warranty as well as seed and that Johnston undertook to promise germinating results. The jury might well enough have found that there was no such promise, but instead they found that there was. We are dealing with a finding of the jury approved by the trial judge, who was in much better position than we are for judging testimony, and not with what we may think from a reading of the evidence might as well or better have been found. We hold that the evidence sustains the finding."

Although, as in Moorhead, the evidence is not particularly convincing, there is support to sustain the jury's finding that the representations of defendant amounted to an express warranty.

■ It is necessary that the breach has proximately caused the damages complained of by the plaintiff. The burden is upon the buyer to establish the breach. Minn. St. 336.2—607(4). Further:

"In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained." U. C. C.

Comment 13 on U. C. C. § 2—314 (referring specifically to actions based upon implied warranties), 21A M. S. A. p. 307.

The defendant-appellant essentially contends that inasmuch as plaintiff failed to introduce evidence that exemplified this causal connection, the jury verdict could have only been based upon pure speculation. Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. 2d 243 (1951). Further, error is claimed in the failure of the lower court to include this question of causation in the special verdict.

Several courts have indicated the importance of the element of causation. The result of this lack of proof is that an otherwise valid action for a breach of warranty will fail. In an action based upon the failure of a weed killer to perform as warranted, the Idaho Supreme Court stated:

"* * * Even if such a failure occurred, the plaintiffs still had to establish that the resulting weeds proximately caused the loss of their potato crop. * * *

* * * * *

"In an action based on breach of warranty, it is necessary to show that the breach of warranty was the proximate cause of the loss sustained. Where the record shows that there are several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of the latter, the plaintiff may not recover, since he has failed to prove that the defendant's breach caused the injury. The rule is stated as follows in 65A C. J. S. [Negligence, § 264, p. 928]:

" 'where the evidence is such that a jury can do no more than guess or conjecture as to which of several acts, conditions, or agencies, not all of which can be charged to defendant, was in fact the efficient cause, it is for the court to decide as matter of law that plaintiff's case has not been established.' " Chisholm v. J. B. Simplot Co. 94 Idaho 628, 631, 495 P. 2d 1113, 1116 (1972).

Further, the following result was reached by the Illinois Court

of Appeals when it was requested to find that the explosives the defendant quarry operator had purchased from the plaintiff were the cause of the inadequate results obtained by the use of the product:

"On this evidence, we are left to speculate. It could be that the poor results were caused by the powder failing to measure up to an implied warranty of fitness for the purpose intended. It could also be that the poor results were caused by failing to remove the broken rock from the toe and the loading to within five feet of the top. There is even a possibility that the shot holes were improperly drilled or that a difference in the rock formation was the cause.

"We have no evidence in this record that anything was wrong with the explosive except by reasoning backward, i. e., the result was poor; therefore, something must have been wrong with the explosive. In view of the other possibilities this is not enough." Olin Mathieson Chemical Corp. v. Moushon, 93 Ill. App. 2d 280, 282, 235 N. E. 2d 263, 264 (1968).

It appears that defendant has made a substantial argument for this court's determination. In view of the language of Moushon, the point is well taken that the causation element must be established. It is a rather specious argument by plaintiff that the factors of weather, management, animal health, supervision of employees, and feeding procedures were not proven to have caused the failure, for that statement results in acceptance of the theory that since no other factor could have prevented realization of the expectations, the minimal results had to have been the product of the failure of the feed supplement. As shown above, proof of causation cannot be established through negative implication.

An important case, cited by defendant, Park v. Moorman Mfg. Co. 121 Utah 339, 241 P. 2d 914, 40 A. L. R. 2d 273 (1952), indicates the extent to which some courts will require plaintiff to sustain his burden of proof with regard to the element of causa-

tion. The court held that there was an express warranty based upon the representation that a particular feed program would produce an egg yield of not less than 65 percent. It is noticeable that this representation was a stronger basis than is presented in the instant case for the conclusion that an express warranty did in fact exist. Two groups were set up for experimental purposes, one given a different feed and another group fed entirely under the defendant's plan. The group fed defendant's product failed miserably to meet the represented standards. The court stated, in a discussion which strongly furthers defendant's case here, that proximate cause is a necessary prerequisite to liability:

"* * * The inferences drawn by officers of defendant company and by buyers from plaintiff that the chickens on defendant's feed and plan were far below the other chickens on the other plan, and that such condition came within a significant period after defendant's feed and plan were adopted is further evidence of proximate cause." 121 Utah 351, 241 P. 2d 920, 40 A. L. R. 2d 283.

In the case before us, the factual disputes obviously open the door for many inferences to be drawn by a jury. However, the conclusion seems compelling that there was little evidence offered which would tend to allow the jury to conclude that defendant's feed supplement, and not one of the other factors which could adversely affect production of healthy animals, was the causation element. It cannot be doubted that causation should at least have been mentioned by the lower court in its instructions to the jury. Instead the jury instructions were the following: That it was the plaintiff's duty to follow the feeding instructions given by the defendant and to use reasonable skill and diligence in feeding and caring for the cattle; that the defendant would not be liable for any losses which were not the direct result of any failure of the defendant's product, but rather were the result of some failure on the part of the plaintiff to use this care and diligence; that the plaintiff could not recover unless

he established by a fair preponderance of the evidence that there existed an express warranty that the feed supplement, if used as directed, would produce a 2-pound-per-day weight gain in the cattle; and finally, that the plaintiff could not recover unless there was a breach of this warranty. It appears that the statement to the jury that defendant's liability depends upon the damage being the direct result of its, and not plaintiff's, failure, is not sufficient without the more definite requirement of an affirmative finding under the special verdict that the breach of warranty proximately caused plaintiff's damages.

Without an affirmative finding by the jury on causation, the conclusion that the entire verdict is based upon speculation is well supported. For this reason, we therefore grant a new trial.

Reversed and remanded for new trial on all issues.