(121 App. Div. 28)

## DEPEW v. PECK HARDWARE CO.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1907.)

1. SALES—IMPLIED WARRANTIES.

One selling a particular variety of seed impliedly warrants that it is the kind of seed it is represented to be.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 754–758, 772–776.]

2. SAME—MEASURE OF DAMAGES.

Where one sells seed which is not of the kind it is guarantied to be, the purchaser's measure of damages is the difference between the value of the crop actually grown from the defective seed and that which would have been grown had the seed complied with the guaranty.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 1284–1286.]

3. SAME—INSTRUCTIONS.

Where, in an action for damages resulting from the selling by defendant of defective seed to plaintiff, the latter gave evidence tending to prove that the crop was of no value, and defendant gave no proof on the subject, an instruction that plaintiff was entitled to recover the value of the crop which would have been produced had the seed been as represented was not open to the exception that plaintiff had not proved the value of the crop that was raised.

4. SAME.

Where, in an action for damages resulting from the selling by defendant to plaintiff of defective seed, it appeared that the seed contained seeds of weeds, so that plaintiff was obliged to plow up the land to prevent the weeds from destroying the growth from the other seeds, it was not necessary for plaintiff to prove on the question of damages the probable value of the crop that would have been raised had it been permitted to remain.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1301.]

5. SAME.

In an action to recover damages resulting from the selling by defendant to plaintiff of defective seed which was so full of harmful seeds that the crop raised was worthless, the expense of refitting the ground and the cost of seed for the second sowing were proper items of damage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 1290–1291.]

6. SAME—EVIDENCE.

Plaintiff purchased of defendant sufficient alfalfa seed to sow 10 acres of his field, and bought the seed for the remaining 5 acres of the field elsewhere. When the crop came up there was a large quantity of trefoil among the alfalfa on both parts of the field. In an action to recover damages resulting from the defective seed, defendant proved that there was trefoil along the roadside, and claimed that this was the cause of the presence of the trefoil in plaintiff's field. *Held*, that plaintiff was entitled to show by experts, for the purpose of counteracting the effect of this evidence, the quantity of trefoil contained in the seed not bought from defendant.

Robson, J., dissenting.

Appeal from Trial Term, Ontario County.

Action by George M. Depew against the Peck Hardware Company. From a judgment for plaintiff, and from an order denying defendant's motion for new trial, it appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE and ROBSON, JJ.

Frank A. Christian, for appellant.
Royal R. Scott, for respondent

SPRING, J.  The plaintiff, a farmer, purchased of the defendant in the spring of 1904 five bushels of alfalfa seed to be sowed on his farm.   Ten acres were covered with the seed, and in the late summer the growth was cut and allowed to remain on the land, which was proper husbandry, as no crop is expected the first year.   In the spring of the following year there was a fairly heavy growth on the land, but the product came out with yellow blossoms all over the field.   The blossom of the alfalfa plant is purple, but the plaintiff and his tenant were unfamiliar with alfalfa, and supposed at first the crop was that plant.   In June the field was mowed, but only a little of the cutting was saved.   The weather was rainy, and the bulk of it was piled up and eventually used as fertilizer.   The plaintiff soon discovered that the yellow blossoms came from trefoil, a weed not useful or marketable, although not noxious.   He also found scattered over the field spots of dodder growth.   These patches were from one to seven or eight feet in circumference.   This weed is particularly ruinous to alfalfa, and can only be extirpated by burning and then plowing the land. The proof on the part of the plaintiff showed that the trefoil exceeded in quantity the alfalfa growth, some witnesses stating that more than three-fourths of the product was of the trefoil.   The plaintiff shortly after the first cutting plowed the land and reseeded it to alfalfa, and has sued the defendant for his loss, alleging that it guarantied the seed to be pure alfalfa seed.

The store of the defendant in Canandaigua, where the seed was purchased, was under the charge of one Dugan.   He stated to the plaintiff that the seed was pure alfalfa seed, "the best seed they could get." The authority of Dugan to make this alleged guaranty was denied by the defendant, and the court charged the jury that there was no express warranty, so that phase of the case is eliminated.

The trial judge permitted the jury to find that there was an implied warranty.   The essence of the charge on this subject is that if the seed was not in fact alfalfa seed, but was substantially trefoil, then the jury might find an implied warranty.  This warranty did not relate to the quality of the alfalfa seed.   The seed itself was pure, what there was of it; but the trefoil was the predominating crop in the field where the sowing was made.   The yellow blossoms extended all over the 10 acres, and several witnesses testified to the greater proportion of the trefoil over the alfalfa.   For aught that appears, the alfalfa seed was of the best sort.   The trouble is that the plaintiff purchased alfalfa seed and obtained trefoil and dodder in major quantities.   The cases cited by the appellant to the effect that there is no implied warranty of quality, only in exceptional cases, do not apply to the facts presented in this record.   The plaintiff paid for and supposed he was purchasing a valuable seed of a certain kind, and after the crop partially matured he discovered that he had obtained a worthless kind of seed and

a valueless crop had resulted. He did not get what he bought. If the alfalfa seed had been defective, not up to the standard in quality, there would have been no implied warranty. A purchaser innocently buying seed, the kind of which he cannot ascertain by reasonable inspection, may assume in ordinary circumstances that he is getting what he purchased. The plaintiff knew nothing of alfalfa seed. He was not capable of making a discriminating inspection of it. Whatever inspection he made was fruitless. The evidence shows that the trefoil closely resembles the alfalfa seed. They are "very similar in shape, color and size, * * * remarkably alike * * * in general appearance.". Only an expert can distinguish them, is the effect of the testimony of Mr. Stewart, the botanist of the state agricultural experiment station at Geneva. The authorities sustain the finding of the jury that there was an implied warranty by the defendant, surviving acceptance, that the seed sold the plaintiff was alfalfa seed. Bell v. Mills, 78 App. Div. 42–46, 80 N. Y. Supp. 34, same case 68 App. Div. 531, 540, 74 N. Y. Supp. 224; Hawkins v. Pemberton, 51 N. Y. 198, 10 Am. Rep. 595; White v. Miller, 71 N. Y. 118–129, 27 Am. Rep. 13. In the latter case, the court at page 129 said:

"The doctrine that a bargain and sale of a chattel of a particular description imports a contract or warranty that the article sold is of that description is sustained by a great weight of judicial authority. * * * A dealer who sells an article, describing it by the name of an article of commerce, the identity of which is not known to the purchaser, must understand that the latter relies upon the description as a representation by the seller that it is the thing described; and this constitutes a warranty."

The appellant contends that an improper rule of damages, to its detriment, was adopted on the trial. The court charged as follows:

"The rule of damages in such cases is that he would be entitled to recover from the person or corporation liable for the damage the fair value of the crop which he lost, or the crop which would have been produced under ordinary circumstances if the seed had been as represented. this crop being a perennial crop or plant, as stated; that is, one lasting from year to year. You may also take into consideration the question of whether or not he should be entitled under such circumstances to the cost of reseeding, which would be the cost of recultivation and the cost of the new seed sown."

Alfalfa is called a perennial plant. It produces for many years without reseeding or cultivation. Three crops may ordinarily be cut each year. No crop is expected the year of the seeding. The plaintiff proved by competent witnesses the probable quantity and also the value of the crop which would have been raised the second year if the seed had been as the plaintiff had the right to expect he had purchased. He then gave proof that the product which he cut was of no value. Believing that the prevalence of the trefoil and dodder would destroy the alfalfa, he plowed the land, and fitted it anew and reseeded it with alfalfa. He proved the cost of this labor and of the seed. These were the two items of damages which were submitted to the jury.

There can be no doubt that the primary rule of damages applicable to cases of this kind is the difference in value between the crop actually grown from the defective seed and that which would have been produced had the seed complied with the guaranty. White et al. v. Mil-

ler et al., 71 N. Y. 118, 132, 133, 27 Am. Rep. 595; Van Wyck v. Allen, 69 N. Y. 61, 67, 25 Am. Rep. 136.

One of the exceptions to the charge is that the plaintiff "had not proved the value of the crop that was raised." The plaintiff gave evidence which tended to show the cutting was of no value. The defendant gave no proof upon that subject. There was, therefore, nothing to deduct in that item from the value of the crop which would have been raised from unmixed alfalfa seed.

The defendant further excepted to the rule of damages given to the jury on the ground that the plaintiff had not "proved the probable value of the crop that would have been raised that year if it had been permitted to remain." The plaintiff, if the testimony in his behalf is to be credited, was confronted with a situation calling for the exercise of judgment. Trefoil was the prevailing plant in the field. The patches of dodder were scattered all through it. This was a noxious, rapidly spreading weed, concededly destructive to the alfalfa. If he allowed the crop to mature and for the succeeding year or more, he might justly have been charged with neglect with not plowing it up as soon as it was discovered, if its continuance resulted in driving out the alfalfa. It was his duty to cut down the damages as much as possible. Bell v. Mills, 68 App. Div. 531, 540, 74 N. Y. Supp. 224; Hamilton v. McPherson, 28 N. Y. 72, 84 Am. Dec. 330; Fox v. Everson, 27 Hun, 355, 358. Whether the plaintiff exercised good judgment and acted wisely in plowing under this crop was submitted to the jury. In the course of his instructions on this point the court said:

"If he, in the exercise of bad judgment, destroyed a crop which was valuable at that time, and which would have proven valuable, the defendant ought not to suffer for such an act of wrong judgment."

The verdict settled the question in plaintiff's favor. If the course pursued by the plaintiff was the best possible husbandry for both parties in the light of all the circumstances, there was no probable value to the crop. According to the position of the plaintiff, he was not called upon to prove its "probable value," for he acted on the assumption that the damages accruing from the foreign seeds would exceed any value which might be derived from the harvest of the alfalfa.

The jury were permitted to include in the damages to the plaintiff the cost of refitting the ground and for the seed for the second sowing. These were proper items of damage. The rule is thus stated in Am. & Eng. Encyc. of Law, vol. 30, p. 219 (2d Ed.):

"Where seed is sold with a warranty that it is of a particular kind and variety, the buyer may, in an action on the warranty, recover the price paid for the seed if it proves worthless, and his expenses in preparing the land for planting, together with the loss sustained from having his land lie idle for the year or for such time as the use of it was lost. If the seed is not true to the warranty and produces a plant which injures the land on which it is planted, the damage to the land thereby caused is also an element of recovery."

The cost for the first crop was not allowed him. The second seeding was caused by the failure of the defendant to furnish him proper seed. He was obliged to recultivate his land in order to put it in the same condition as at the first seeding. If he was entitled to recover, the measure

of his recovery was the loss he sustained, providing it was the natural proximate result of the defendant's breach of the contract. If the plaintiff was justified in plowing under the promiscuous growth of trefoil, dodder, and alfalfa, the cost of so doing was properly chargeable to the defendant. It would have been improvident for the plaintiff to leave the land plowed without a crop. He is to be compensated for his loss and his land restored, as nearly as practicable, to its former condition, and the expense of the refitting was one of the elements in the restoration.

The right of the defendant to have deducted from the loss on the crop, the expense of putting it in, was not specifically raised on the trial. We doubt the propriety of any such reduction in this case. Van Wyck v. Allen et al., 69 N. Y. 61–67, 25 Am. Rep. 136. Under the rule of reduction, if the expenses equaled the value of the crop, he would get nothing, although he incurred the expenditures. He should be entitled to the same from the defendant as if he had raised the crop from good seed and sold it at its fair value.

The plaintiff in the spring of 1904 sowed 15 acres with alfalfa seed. The defendant was able to supply him with only sufficient for 10 acres. He purchased from one Mather seed for the remaining 5 acres. It was all in one field, not separated by any fence. The trefoil blossoms and the dodder extended uniformly all over the 15 acres. There was no apparent difference in that part of the field seeded from the Mather seed and that purchased of the defendant by the plaintiff. The defendant gave proof that there was trefoil along by the roadside. It showed that a German brought the seed from Germany many years ago, and a little patch of it was sowed about 100 rods from the 15-acre field. This proof enabled the defendant to claim that the trefoil came, to some extent at least, from the roadside and other places. The plaintiff had some of the Mather seed left over. He caused it to be examined and analyzed by an expert, who testified to the quantity of trefoil and dodder seed contained in it. This proof was competent to counteract the effect of the evidence given by the defendant as to the existence of this seed in the neighborhood. The court explained to the jury the limited scope of this testimony, saying:

"The evidence of the analysis of another seed was admitted here for the sole purpose of allowing the jury to infer whether or not the appearance of yellow blossoms of trefoil in this field was due to contamination from highways and from perhaps other places upon the farm, or whether or not it was due to the presence of trefoil in the seed sown in the season of 1904."

After the proof showing the equal prevalence of the trefoil and dodder in the part of the field covered by the Mather seed, it was essential for the plaintiff to explain the reason for that condition. Had no explanation been given, the defendant might well have claimed that none could be presented, and that the existence of the weed in that part of the field came by the wind or some similar source. The inference would have been irresistible, without the explanation, that the 10 acres on which this seed sold by the defendant was sowed was infected in the same way. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except ROBSON, J., who dissents on the ground that the jury were not instructed as to the proper measure of respondent's damages, if any were to be awarded.