64 So.2d 162 (1953)
CORNELI SEED CO.
v.
FERGUSON.
Supreme Court of Florida, en Banc.
February 20, 1953.
Rehearing Denied March 31, 1953.
*163 Ausley, Collins & Truett, Tallahassee, and Robinson & Singeltary, Leesburg, for appellant.
Walter Warren, Leesburg, for appellee.
HOBSON, Chief Justice.
Appellee instituted an action at law against appellant for damages predicated upon a warranty by appellant that the watermelon seed which appellee purchased from Corneli Seed Company were seed which would produce "Black Diamond" watermelons, and that the seed which appellee received did not produce "Black Diamond" watermelons. Mr. Ferguson did not see fit to bottom his suit upon an alleged breach of any condition of the contract. We have examined cases wherein the latter course was pursued and some courts have made it clear that a suit founded upon a broken condition may be maintained whereas one predicated upon an implied warranty may not. We are not inclined to discuss further such distinction because we are of the opinion, and hold herein, that this suit founded upon an implied warranty is maintainable.
Among other defenses appellant averred that it had taken the precaution, which it contends it had a legal right to do, to insert in the invoice and upon the several bags of seed a non-warranty clause or disclaimer of warranty, which reads:
"The Corneli Seed Co. gives no warranty, express or implied as to description, quality, productiveness, or any other matter of any seeds, bulbs, or plants it sells and will not be responsible for the crop. Merchandise must not be returned without written permission. Bags net cash, not returnable."
Although other issues were created, we consider the paramount question to be whether this disclaimer or non-warranty clause constitutes a good defense as a matter of law. Suffice it to say with reference to other questions raised herein that the only one of them which we consider meritorious and worthy of discussion is the challenge directed to the amount of damages found and declared in the judgment rendered by the learned Circuit Judge who heard and decided this case without a jury.
It is much easier to state than to resolve the cardinal query presented in this case. It has never been decided by this Court. It is true that in the case of Vaughan's Seed Store v. Stringfellow, 56 Fla. 708, 48 So. 410, and in the case of West Coast Lumber Co. v. Wernicke, 137 Fla. 363, 188 So. 357, 358, we determined that the measure of damages in a case similar to the instant suit "would be the difference between the market value of the crop raised and the crop from the seed ordered." In the case of Phillips v. Beamer, 144 Fla. 769, 198 So. 695, it appears upon our inspection of the original record on file in this Court that the question of the legal effect of a non-warranty clause might have been, but was not presented.
We find cases from other jurisdictions about equally divided upon the subject of the effect of a disclaimer or non-warranty clause with reference to sale and purchase of seed. An examination of those opinions from courts of last resort of other states wherein it has been held that a disclaimer or non-warranty clause constitutes a defense as a matter of law in cases of this type discloses that they have, in the main, given as their reasons for such ruling that the seed merchant could not protect himself were he not allowed the shelter of a disclaimer or non-warranty clause for in such event he would find it difficult indeed to survive the litigation "that would come to his door"; that for the small price customarily charged for seed the producer thereof rightly feels that he could not afford the warranty; that crops are destroyed and impaired by many causes which are difficult to identify clearly and hence it is almost impossible for a jury to accurately distinguish between damage resulting from such causes and damage flowing from poorly or improperly cultivated seed; that considering "the greatest good for the greatest number" it is better that the farmer in isolated instances suffer damage than that the seed merchant, who by and large produces seed of good grade which are reliable, be required to "close up shop."
Our analysis of these cases leads us to the conclusion that the reasons given for the ruling to the effect that a disclaimer or non-warranty *164 clause should be considered a defense might more accurately be suggested as reasons for upholding such a defense in cases where the suits are bottomed upon a failure in quality and productiveness, rather than upon variance in variety. This case is classified in the latter category.
The allegation is made, and this record contains competent substantial evidence which sustains such allegation, that there was a varietal variance and although there is evidence which tends to show a failure of quality and productiveness, the actionable defect or deficiency in the seed stems from the fact that "Black Diamond" watermelons were not produced, although appellee ordered seed which were represented as seed which would bring forth such variety. The Circuit Judge was justified in concluding that the subject seed did not produce "Black Diamond" watermelons. We are not, therefore, persuaded to follow the decisions which hold that a disclaimer or non-warranty clause constitutes a defense in a case such as this.
Had this suit been predicated upon the mere fact that although "Black Diamond" watermelons were produced they were not of U.S. No. 1 quality or grade or otherwise marketable, we might be persuaded to hold a disclaimer or non-warranty clause to be a defense for then the cornerstone of the law suit would have rested upon a failure in quality and productiveness. However, we are not inclined so to rule in this case because the variance in variety established by the evidence is deemed by us to be a material variance resulting from a defect in the seed which was latent, that is to say which was not obvious to appellee when the seed were delivered to, and inspected by, him. If, for instance, the seed had been sunflower seed it should have been readily apparent to one who gives himself to cultivation of the soil that they were not watermelon seed. On the other hand, it would be impossible for even an experienced farmer upon an inspection of watermelon seed to determine the variety of watermelon that such seed would produce.
The distinction which we make between a variance in quality or productiveness and a variance in variety flows from the fact, which is a matter of common knowledge, that proper husbandry, weather and soil conditions and other causes beyond the control of the producer of the seed have a direct bearing upon the matter of quality or productiveness, whereas such causes have a very remote bearing, if any at all, upon a variance in variety. In fact it has been shown in this case by testimony of experts and of disinterested, experienced, qualified and active watermelon growers that growing conditions and practices would not alter a true variety of "Black Diamond" watermelon so as to produce or grow out another and different variety.
We recognize that our holding herein may be considered by some as too harsh and burdensome upon the seed merchant but we feel that he should not be relieved from liability, even in the face of a disclaimer, or a non-warranty clause, in a matter of a material variance in variety because, if not wholly, certainly in large part, it is he who is responsible for developing and producing seed which he holds out to be of a stated variety for, as aforestated, growing conditions and practices have little or no effect upon variety. On the other hand, growing conditions and practices have a definite effect upon quality and productiveness. Consequently, we believe that it is entirely reasonable to uphold a disclaimer or non-warranty clause in a case of variance in quality or productiveness because such variance depends largely upon good husbandry, weather conditions and the like, which are matters almost exclusively under the control of the farmer or are acts of God. Certainly they are circumstances and conditions which are wholly beyond the control of the seed merchant.
We now turn our attention to the question of the amount of damages. It is obvious that the judgment entered is greater than the damages set forth in the ad damnum clause of the complaint. However, we feel that there is a more serious question in connection with the matter of the amount of damages. Our study of the testimony in this case forces us to the conclusion that the Circuit Judge either accepted the conjectural testimony of the appellee with reference *165 to the number of carloads of "Black Diamond" watermelons he would have harvested had the seed been true to type and failed to give proper consideration to the testimony of qualified, experienced watermelon growers who testified specifically as to the number of carloads which they produced the same season within the vicinity of appellee's 65 acre tract or he predicated the amount of damages upon a proper determination of the number of carloads but upon an improper figure as a profit per carload which appellee might have reasonably anticipated had there been no varietal variance in the seed purchased and planted by him.
The evidence does not justify a finding that Ferguson, had the seed been true to name, reasonably could have anticipated the production of more than 18 or 20 carloads of "Black Diamond" watermelons. Using either number and considering the amount of the judgment ($20,748.64) it is patent that if the Circuit Judge made a correct finding on the question of carloads which Ferguson might have marketed he employed the approximate average gross sales prices testified to by Mr. I.D. English as having been received by Messrs. J.H. Butler, Byron Herlong, J.E. Blitch and George McCabe for their crops of "Black Diamond" watermelons. Gross sales prices received by other watermelon growers do not constitute the true criterion for determining the amount of damage sustained by Ferguson. Mr. McCabe testified to the net return which he received on his crop of "Black Diamond" watermelons.
The amount of damage in a case of this character should be figured on the net returns rather than the gross sale prices for obviously the farmer should only have as damage the net amount which he might show he would have received for his crop had the seed produced that variety of melon which it was at least impliedly represented they would yield. The seed merchant should not be penalized by the inclusion in the judgment against him of such items as brokerage fees, cutting costs, grading costs, loading costs or the costs of trucking to freight cars which would have been entailed had Ferguson actually marketed a crop of genuine "Black Diamond" watermelons. Appellee is entitled only to the profit which he would have made had the seed produced "Black Diamond" watermelons and should be required to allow credit for the $1,100 which he admits he got for the crop of melons he actually produced.
Consequently, we reverse this case for a new trial only upon the question of the amount of damages.
Reversed.
TERRELL, THOMAS, SEBRING, ROBERTS, MATHEWS and DREW, JJ., concur.

On Petition for Rehearing.
PER CURIAM.
We have re-examined the record in this cause, including the findings of fact made by the Circuit Judge which were filed pursuant to a stipulation entered into between the parties subsequent to the date upon which the transcript of record was lodged in this Court, and have concluded for several reasons, among them being the fact that H.O. Ferguson in his complaint did not allege a damage in excess of $600 per carload of watermelons, that the ends of justice require that this case be remanded for a new trial as directed in and by our original opinion.
It is so ordered and the Petition for Rehearing of appellees should be and it is hereby denied.
ROBERTS, C.J., and TERRELL, THOMAS, SEBRING, HOBSON, MATHEWS and DREW, JJ., concur.